**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| MAGNACROSS, LLC,<br><br>  Plaintiff,<br><br>v.<br><br>ACTIONTEC ELECTRONICS, INC. ET AL.,<br><br>  Defendants. | Civil Action No. 2:16-cv-00506-JRG-RSP<br>LEAD CASE |
| MAGNACROSS, LLC,<br><br>  Plaintiff,<br><br>v.<br><br>ADTRAN, INC.,<br><br>  Defendant. | Civil Action No. 2:16-cv-00507-JRG-RSP |

**DEFENDANT ADTRAN, INC.'S MOTION TO DISMISS
THE SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

Defendant **ADTRAN, Inc.** ("ADTRAN"), by and through its undersigned counsel and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, respectfully moves the Court to dismiss Plaintiff Magnacross LLC's ("Magnacross") Second Amended Complaint for Patent Infringement ("Second Amended Complaint") (Dkt. No. 84) for failure to state a claim upon which relief can be granted.  In support of its motion, ADTRAN states as follows:

## I.  INTRODUCTION

As Magnacross attempts to add sufficient specificity to its infringement claims, it only makes the deficiencies of its infringement theory more apparent.  In response to ADTRAN's motion to dismiss its First Amended Complaint on the basis that it contained no allegations that ADTRAN made, used, or sold data sensors, Magnacross added more specific allegations concerning data sensors to its Second Amended Complaint.  Those allegations make clear, however, that Magnacross's infringement theory relies on the wrong communications link.  While independent claims 1 and 12 are directed to communications between the claimed apparatus (*i.e.*, the Accused Instrumentalities) and a data processing function (*e.g.*, a PC), Magnacross's infringement allegations are based on communications between what it alleges to be data sensors and ADTRAN's Accused Instrumentalities.  As a result, Magnacross has failed, yet again, to plead a plausible claim for infringement.

## II.  STATEMENT OF THE ISSUE

Whether this case is due to be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure because Magnacross failed to plead a plausible claim for relief in its Second Amended Complaint.

### III. STATEMENT OF THE FACTS

#### A. Procedural History

Magnacross filed this lawsuit against ADTRAN on May 17, 2016, alleging that ADTRAN infringed US Patent No. 6,917, 304 ("the '304 Patent). *See* No. 2:16-cv-507, Dkt. No. 1.

On July 15, 2016, ADTRAN filed its Motion to Dismiss for Improper Venue in which it argued that venue was improper because ADTRAN has not made, used, sold, or offered to sell any accused product in the Eastern District of Texas. *See* No. 2:16-cv-507, Dkt. No. 9.

On July 21, 2016, Magnacross filed its First Amended Complaint in which it specifically identified additional accused products. *See* No. 2:16-cv-507, Dkt. No. 13. Because ADTRAN's investigation showed that it had sold in the Eastern District of Texas at least some of the products that were newly accused in the First Amended Complaint, ADTRAN filed a Motion to Withdraw Its Motion to Dismiss (Original) Complaint for Improper Venue. *See* No. 2:16-cv-507, Dkt. No. 18. The motion was granted on August 9, 2016. *See* No. 2:16-cv-507, Dkt. No. 19.

On August 4, 2016, ADTRAN filed its Motion to Dismiss the First Amended Complaint for Failure To State a Claim in which it argued that Magnacross had not plead a plausible claim of infringement because it had not alleged that ADTRAN made, used, or sold data sensors, a required element of the claimed invention. *See* Dkt. No. 43. On August 26, 2016, Magnacross filed its Opposition to Defendant ADTRAN, Inc.'s Motion to Dismiss the First Amended Complaint for Failure to State a Claim. Dkt. No. 63. On September 6, 2016, ADTRAN filed its Reply in Support of Its Motion to Dismiss the First Amended Complaint for Failure To State a Claim. Dkt. No. 75. The motion to dismiss remains pending.

On August 15, 2016, ADTRAN filed its Motion to Stay Pending Decision on Its Motion to Dismiss for Failure To State a Claim. Dkt. No. 54. On September 1, 2016, Magnacross filed its Opposition to Defendant ADTRAN, Inc.'s Motion to Stay Pending Decision on ADTRAN's

2

Motion to Dismiss for Failure to State a Claim.  Dkt. No. 72.  On September 9, 2016, ADTRAN filed its Reply in Support of Its Motion to Stay Pending Decision on Its Motion to Dismiss for Failure to State a Claim.  Dkt. No. 77.  The motion to stay remains pending.

On September 15, 2016, Magnacross filed its Second Amended Complaint for Patent Infringement against ADTRAN.  Dkt. No. 84.  This motion followed.

**B.    The '304 Patent**

ADTRAN previous provided a short description of the '304 Patent in its motion to dismiss the first amended complaint.  *See* Dkt No. 43 at 3-4.

The '304 Patent includes two independent claims, Claims 1 and 12. Claim 1 recites:

> A method of wireless transmission of data in digital and/or analogue format through a communications channel *from at least two data sensors to a data processing means* said method comprising the step of division of said channel into sub-channels and *transmitting said data from said data sensors respectively though said sub-channels* accordingly; characterized by
>
> a) said step of division of said communications channel being effected asymmetrically whereby the data carrying capacities of said sub-channels are unequal; and
>
> b) the data rate required for transmission from said local sensors differing substantially between said at least two sensors; and
>
> c) allocating data from said local data sensors to respective ones or groups of said sub-channels in accordance with the data carrying capacities of said sub-channels.

Independent claim 12 of the '304 Patent recites:

> Apparatus for wireless transmission of data in digital and/or analogue format through a communications channel *from at least two local data sensors to a data processing means*, the apparatus comprising a multiplexer adapted to effect division of said communications channel into sub-channels, *and a transmitter adapted to transmit said data through said sub-channels accordingly*; characterized by

3

a) said multiplexer being adapted to divide said communications channel asymmetrically whereby the data carrying capacities of said sub-channels are unequal; and

b) control means adapted to allocate data from said local data sensors to respective ones or groups of said communications sub-channels in accordance with substantially different data rate requirements from said local sensors.

### C. Magnacross's Infringement Allegations

In its Second Amended Complaint against ADTRAN, Magnacross continues to allege that ADTRAN directly infringes claim 12 of the '304 Patent by "making, using, selling, and/or offering for sale an apparatus for wireless transmission of data in digital and/or analog format through a communications channel from at least two local data sensors to a data processing means, including without limitation Defendant's wireless router." Dkt. No. 84 at ¶16.

Specifically, Magnacross alleges that ADTRAN's Accused Products are "an apparatus for wireless transmission of data in digital format through a communications channel." *Id.* at ¶17. Magnacross further alleges that "Data sensors, such as data sensors that use the IEEE 802.11b/g and IEEE 802.11n wireless specifications to transmit over a wireless local area network, are capable of being and are wirelessly connected to the Accused Instrumentality to transmit data through the communication channel to a data processing means" and that the Accused Instrumentalities have "a multiplexer adapted to divide the communications channel into sub-channels and . . . a transmitter to transmit data through the sub-channels." *Id.* Magnacross also alleges that the "multiplexer is adapted to divide the communications channel asymmetrically such that the data carrying capacities of the sub-channels are unequal." *Id.* Finally, Magnacross alleges that the Accused Instrumentalities have "a controller that allocates data from the local data sensors to ones or groups of the communications sub-channels in accordance with the substantially different data rate requirements of the local sensors." *Id.* at ¶18.

Magnacross also alleges, for the first time, that ADTRAN directly infringes independent claim 1 "by performing a method of wireless transmission of data in digital format through a communications channel from at least two data sensors to a data processing means including without limitation transmitting data from at least two data sensors to a data processing means using Defendant's wireless routers." *Id.* at ¶20.

Specifically, Magnacross alleges that ADTRAN "has used and is using the Accused Instrumentality to provide a communications channel . . . and divide the . . . channel into multiple sub-channels through which data from data sensors is transmitted." *Id.* at ¶20. Magnacross further alleges that ADTRAN "has used and is using the Accused Instrumentality to divide the communications channel asymmetrically such that the data carrying capacities of the sub-channels are unequal" and "to allocate data from the local data sensors to ones or groups of sub-channels in accordance with the data carrying capacities of the sub-channels." *Id.*

In addition, Magnacross alleges, for the first time, that ADTRAN has induced infringement of at least claims 1 and 12 of the '304 Patent. *Id.* at ¶21. Magnacross alleges that ADTRAN "encourages customers to use the Accused Instrumentalities for conducting the directly infringing use and advertises the directly infringing use by customers despite knowing of the infringing use." *Id.* at ¶22.

**IV.   ARGUMENT**

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court must accept as true all factual allegations of the complaint, *Whitley v. Hanna*, 726 F.3d 631, 637 (5th Cir. 2013), the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at

5

555). A pleading offering only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. While a plaintiff is allowed to plead claims upon information and belief, "the complaint must set forth the basis for such belief." *United States ex rel Doe v. Dow Chem. Co.*, 343 F.3d 325, 329 (5th Cir. 2003) (internal quotation marks omitted).

Magnacross's allegations in its Second Amended Complaint show that the asserted claims 1 and 12 do not read on the Accused Products at the basic level of plausibility. "[T]o state a claim for direct infringement, a plaintiff must explicitly plead facts to plausibly support the assertion that a defendant 'without authority makes, uses, offers to sell, or sells any patented invention during the term of the patent.'" *Ruby Sands LLC v. Am. Nat'l Bank of Texas*, No. 2:15-CV-1955-JRG, 2016 WL 3542430, at *2 (E.D. Tex. June 28, 2016) (quoting 35 U.S.C. § 271(a)). Thus, a plaintiff "must plead that every limitation, or equivalent thereof, in the representative claim can plausibly be found in an accused product." *Atlas IP, LLC v. City of Naperville*, No. 15 C 10744, 2016 WL 3907029, at *3 (N.D. Ill. July 19, 2016). Magnacross has not satisfied that burden.

Claims 1 and 12 claim a method and apparatus in which data is transmitted *from the claimed apparatus* (i.e., what ought to be alleged as the accused product) by wireless transmission to a data processing function. Claim 12 requires an "[a]pparatus for wireless transmission of data in digital and/or analogue format through a communications channel **from at least two local data sensors to a data processing means** . . . ." Dkt. No. 84-1, Ex. A, cl. 12 (emphasis added). Similarly, claim 1 is directed to "[a] method of wireless transmission of data in digital and/or analogue format **through a communications channel from at least two data sensors to a data processing means** . . . ." *Id.*, cl. 1 (emphasis added). In both instances, the data originates from the data sensors, it is acted upon by the claimed apparatus, and it is transmitted **on the**

6

**communications channel from the claimed apparatus to the data processing means**. The specification makes clear that the communications channel is a wireless communication channel between the apparatus and a data processing means. *See id.* at Fig. 1. As explained in the specification, the controller 40 is linked to the apparatus's transmit function, which transmits data from the apparatus to the data processing means. *See id.* at Fig. 2 & col. 5:15-42. The controller 40 "provide[s] a multiplexing function whereby communication channel 12 is divided into 16 sub-channels." *Id.* at col. 5:22-24. Thus, both claims are directed to the transmission of data from the claimed apparatus to the data processing means.

Magnacross's allegations, on the other hand, focus on the wrong set of communications. Magnacross points to a communications channel between 802.11b/g/n sensors and the Accused Instrumentality. Magnacross alleges that "[d]ata sensors, such as data sensors that use the IEEE 802.11 b/g and IEEE 802.11n wireless specifications to transmit over a wireless local area network, are capable of being and are wirelessly connected to the Accused Instrumentality to transmit data through the communication channel to a data processing means." Dkt. No. 84 at ¶17. Under Magnacross's allegations, an infringing apparatus according to claim 12 would exist, if at all, in the data sensor. And the claimed method would be performed, if at all, by an apparatus in the data sensor. But Magnacross levies its accusations not against the device that *transmits* data from the data sensor as stated by the claims, but against the devices that receive that data.

Specifically, Magnacross alleges that the Accused Instrumentality includes a multiplexer and controller that are adapted to act on the communications channel between the alleged data sensors and the Accused Instrumentality. *Id.* at ¶¶17-18. Magnacross thus identifies the communications channel as the one between the 802.11b/g/n data sensors and the Accused Instrumentality, and its allegations relate to the ability of the Accused Instrumentalities to transmit

7

and receive data over this communications channel from the data sensors. Citing various pages from ADTRAN's website, Magnacross alleges that ADTRAN infringes because it sells Accused Instrumentalities that are used with unspecified "Wi-Fi" sensors. *Id.* ¶19.[1] Magnacross further alleges that "Defendant has used and is using a systems that use the Accused Instrumentality with sensors that transmit wirelessly by Wi-Fi to a wireless router using the 802.11b/g specification, and that transmit wirelessly by Wi-Fi to a wireless router using the 802.11n specification." *Id.* at ¶20. These allegations further show that Magnacross is basing its theory of infringement on the wireless communications channel between the generic Wi-Fi sensor and the Accused Instrumentality – not a communications channel between the Accused Instrumentality and any data processing means, which is the subject of the claimed invention.

By focusing on the capabilities of various wireless sensors to wirelessly transmit to the Accused Instrumentality via 802.11b/g/n, Magnacross misses the point entirely: according to claims 1 and 12, it does not matter whether the data sensors are connected wirelessly or via wires to the "apparatus"; what matters is that the apparatus transmits over a communications channel to a data processing means, and that the apparatus perform certain functions on *that* communications channel. Magnacross makes no allegation that the Accused Instrumentalities have any capability to perform the claimed functionality on a communications channel between the Accused Instrumentality and the data processing means.

The first diagram below is a basic block diagram of claims 1 and 12, and the second is a block diagram of Magnacross's allegations:

---

[1] These materials, which are in the nature of press releases and marketing documents, contain no information that there are at least two data sensors (or any device that Magnacross characterizes as a "data sensor") with the special asymmetric data pattern of the data sensors of the claimed invention.

8



Figure 1. Arrangement of Claims 1 and 12



Figure 2. Magnacross Infringement Allegations

9

The upper diagram depicts the arrangement covered in claims 1 and 12 wherein the multiplexer and the controller operate on the communications channel between the apparatus's transmitter and the data processing means. The lower diagram depicts Magnacross's infringement allegations, which address only communications between the data sensors and ADTRAN's Accused Instrumentalities. In short, Magnacross's proposed amended allegations target the wrong communications channel and thus fail to plead a plausible claim for direct infringement.

Having failed to plead a plausible claim of direct infringement, Magnacross's indirect infringement allegations fail as well. "To prevail on inducement, the patentee must show, first that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Kyocera Wireless Corp. v. Int'l Trade Comm'n,* 545 F.3d 1340, 1353-54 (Fed. Cir. 2008) (internal quotation marks omitted). Without the requisite direct infringement, there can be no inducement.

## V. CONCLUSION

Because Magnacross has failed to plead a plausible claim of infringement, ADTRAN requests that the Court grant its motion and dismiss Magnacross's Second Amended Complaint with prejudice pursuant to Rule 12(b)(6).

Respectfully submitted on this, the 3rd day of October, 2016.

/s Paul M. Sykes
Paul M. Sykes – *Lead Attorney*
Alabama State Bar No. ASB-4309-S52P
BRADLEY ARANT BOULT CUMMINGS LLP
1819 Fifth Avenue North
Birmingham, AL 35203
Telephone: (205) 521-8766
Facsimile: (205) 488-6766
Email: psykes@babc.com

        Harry Lee Gillam, Jr.
G<small>ILLAM</small> & S<small>MITH</small>, LLP
303 South Washington Avenue
Marshall, TX  75670
Telephone:     (903) 934-8450
Facsimile:     (903) 934-9257
Email:  gil@gillamsmithlaw.com

*Attorney for Defendant ADTRAN, Inc.*

## **CERTIFICATE OF SERVICE**

    The undersigned certifies that on the 3rd day of October, 2016, the foregoing document was filed electronically with the Clerk of Court via the CM/ECF system, and thereby served on all counsel who are deemed to have consented to electronic service.

                                                       s/Paul M. Sykes
                                                       OF COUNSEL

                                                       *Attorney for Defendant ADTRAN, Inc.*