**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **MAGNACROSS LLC,** Plaintiff, v. **ACTIONTEC ELECTRONICS INC.,** Defendant. | CASE NO.  2:16-cv-506-JRG-RSP (LEAD CASE) (CONSOLIDATED) **PATENT CASE** |
| **ADTRAN, INC.,** Defendant. | CASE NO.  2:16-cv-507-JRG-RSP (CONSOLIDATED) |

**PLAINTIFF MAGNACROSS LLC'S OPPOSITION TO DEFENDANT
ADTRAN, INC.'S MOTION TO DISMISS THE SECOND AMENDED
COMPLAINT FOR FAILURE TO STATE A CLAIM**

David R. Bennett (*Admitted  E.D. Texas*)
Illinois Bar No. 6244214
DIRECTION IP LAW
P.O. Box 14184
Chicago, IL 60614-0184
Telephone: (312) 291-1667
e-mail:  dbennett@directionip.com

**ATTORNEY FOR PLAINTIFF
MAGNACROSS LLC**

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................. i

TABLE OF AUTHORITIES .................................................................................... ii

TABLE OF EXHIBITS ........................................................................................... iv

I.   INTRODUCTION ........................................................................................... 1

II.  STATEMENT OF FACTS ............................................................................. 3

    A.   U.S. Patent No. 6,917,304 – Claims 1 and 12 .................................... 3

    B.   Magnacross's Second Amended Complaint ......................................... 5

III. STATEMENT OF LAW .................................................................................. 9

IV.  MAGNACROSS'S SECOND AMENDED COMPLAINT PLAUSIBLY PLEADS
    SUFFICIENT FACTS TO ASSERT DIRECT AND INDIRECT INFRINGEMENT ......... 11

    A.   Defendant's Motion to Dismiss is Based on Incorrect Constructions of Claims 1
       and 12 of the '304 Patent ..................................................................... 11

    B.   Magnacross's Second Amended Complaint Properly Alleges a Claim for Direct
       Infringement of Claims 1 and 12 of the '304 Patent ........................... 14

       1.   Magnacross's Second Amended Complaint Plausibly Alleges Direct
          Infringement of Claim 1 ........................................................... 15

       2.   Magnacross's Second Amended Complaint Properly Alleges Direct
          Infringement of Claim 12 ......................................................... 19

    C.   Magnacross's Second Amended Complaint Contains an Accusation of Induced
       Infringement of Claims 1 and 12 that is Properly Pled Because it Pleads
       Plausible Facts Showing that Defendant Possessed the Specific Intent to
       Encourage its Customers to Infringe the '304 Patent ......................... 22

    D.   In the Alternative, Magnacross Should be Granted Leave to Amend its
       Complaint ............................................................................................ 24

CONCLUSION .......................................................................................................... 24

## TABLE OF AUTHORITIES

**Cases**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
   797 F.3d 1020 (Fed.Cir. 2015) ....................................................................... 10, 19

*Ashcroft v. Iqbal*,
   129 S.Ct. 1937 (2009) ........................................................................................ 10

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................... 10

*Bill of Lading Trans & Process. Sys. Patent Litig., In re*,
   681 F.3d 1323 (Fed.Cir. 2012) .......................................................................... 10

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*,
   116 F.3d 1364 (11th Cir. 1997) ........................................................................... 9

*Campbell v. Wells Fargo Bank*,
   781 F.2d 440 (5th Cir. 1986) .......................................................................... 9, 14

*Foman v. Davis*,
   371 U.S. 178 (1962) ........................................................................................... 24

*Hilgreave Corp. v. Symantec Corp.*,
   265 F.3d 1336 (Fed. Cir. 2001) ......................................................................... 10

*Inmotion Imagery Techs., LLC v. Imation Corp.*,
   C.A. No. 2:12-cv-298-JRG, slip op. (E.D. Tex. Mar. 23, 2016) ................................ 10, 11, 23

*Intel Corp. v. U.S. Int'l Trade Comm'n*,
   946 F.2d 821, 832 (Fed.Cir. 1991) .................................................................... 10

*Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*,
   677 F.2d 1045 (5th Cir. 1982) ............................................................................ 9

*Lochner Techs., LLC v. AT Labs Inc.*,
   C.A. No. 2:11-cv-242-JRG, slip op. (E.D. Tex. July 5, 2012) ......................... 9, 23

*Lodsys, LLC v. Brother Int'l Corp.*,
   C.A. No. 2:11-cv-90-JRG; slip op. (E.D. Tex. March 8, 2012) ....................... 9, 23

*Lowery v. Texas A&M Univ. Sys.*,
   117 F.3d 242 (5th Cir. 1997) .............................................................................. 9

*McZeal v. Sprint Nextel Corp.*,
   501 F.3d 1354 (Fed.Cir. 2007) ...................................................................... 9, 10

*Mobilemedia Ideas LLC v. HTC Corp. and HTC America, Inc.*,
   C.A. No. 2:10-cv-112-TJW, slip op. (E.D. Tex. Sept. 15, 2011) ....................... 23

*Parallel Networks, LLC v. Abercrombie & Fitch, et. al.*,
   C.A. No. 6:10-cv-111-LED at Dkt. No. 336 (E.D. Tex. March 14, 2011) ............ 2

*Phonometrics, Inc. v. Hospitality Franchise Systems*,
   203 F.3d 790 (Fed.Cir. 2000) ............................................................................. 9

*Teleflex Inc. v. Ficosa N. Am. Corp.*,
    299 F.3d 1313 (Fed. Cir. 2002) ........................................................................................ 13

*Thorner v. Sony Computer Entertainment America LLC*,
    669 F.3d 1362 (Fed. Cir. 2012) ...................................................................................... 13

**Rules**

Rule  8(a)(2), Fed.R.Civ.P. ................................................................................................ 9

Rule 12(b)(6), Fed.R.Civ.P. ................................................................................................ 9

# <u>TABLE OF EXHIBITS</u>

Exhibit 1        *Parallel Networks, LLC v. Abercrombie & Fitch, et. al.*,
                 C.A. No. 6:10-cv-111-LED at Dkt. No. 336 (E.D. Tex. March 14, 2011).

Exhibit 2        United States Patent No. 6,917,304

Exhibit 3        *Lochner Techs., LLC v. AT Labs Inc.*,
                 C.A. No. 2:11-cv-242-JRG, slip op. (E.D. Tex. July 5, 2012).

Exhibit 4        Amended Complaint at issue in *Lochner Techs., LLC v. AT Labs Inc.*,
                 C.A. No. 2:11-cv-242-JRG, slip op. (E.D. Tex. July 5, 2012).

Exhibit 5        *Lodsys, LLC v. Brother Int'l Corp.*,
                 C.A. No. 2:11-cv-90-JRG; slip op. (E.D. Tex. March 8, 2012).

Exhibit 6        Complaint at issue in *Lodsys, LLC v. Brother Int'l Corp.*,
                 C.A. No. 2:11-cv-90-JRG; slip op. (E.D. Tex. March 8, 2012).

Exhibit 7        *Inmotion Imagery Techs., LLC v. Imation Corp.*,
                 C.A. No. 2:12-cv-298-JRG, slip op. (E.D.Tex. Mar. 23, 2013).

Exhibit 8        Complaint at issue in *Inmotion Imagery Techs., LLC v. Imation Corp.*,
                 C.A. No. 2:12-cv-298-JRG, slip op. (E.D.Tex. Mar. 23, 2016).

Exhibit 9        *Mobilemedia Ideas LLC v. HTC Corp. and HTC America*,
                 C.A. No. 2:10-cv-112-TJW, slip op. (E.D. Tex. Sept. 15, 2011).

Exhibit 10       Complaint at issue in *Mobilemedia Ideas LLC v. HTC Corp. and HTC America*,
                 C.A. No. 2:10-cv-112-TJW, slip op. (E.D. Tex. Sept. 15, 2011).

Plaintiff Magnacross LLC ("Magnacross") hereby opposes Defendant ADTRAN, Inc.'s ("Defendant") Motion to Dismiss the Second Amended Complaint for Failure to State a Claim (Dkt. No. 106) ("Defendant's Motion")).   Defendant incorrectly contends that Magnacross's complaint does not properly plead direct infringement or induced infringement.

Defendant has filed three motions to dismiss, which target different issues that Defendant then drops in each subsequent motion.  Defendant's first motion to dismiss sought a dismissal for improper venue.  (C.A. 2:16-cv-507 at Dkt. No. 9).  Defendant withdrew its first motion after Magnacross added new products in a first Amended Complaint.  (C.A. 2:16-cv-507 at Dkt. Nos. 18, 19).  Defendant's second motion to dismiss contended that the first Amended Complaint failed to state a claim for patent infringement by arguing solely that the apparatus of claim 12 required data sensors.[1]  (*See* Dkt. No. 43 at 3-4, 6-8).  Defendant abandons its data sensors argument in its current motion and now alleges non-infringement based on an incorrect claim construction of limitations directed to the transmission of data.

## I.      INTRODUCTION

Defendant's Motion is based solely on an improper and premature claim construction argument.  Defendant contends that claim 1 requires a "claimed apparatus" that transmits data; however, claim 1 is a method claim that does not have a "claimed apparatus."  Defendant also incorrectly argues that claims 1 and 12 must be construed such that the relevant wireless communications channel is the one "between the [accused] apparatus and the data processing means."  However, the preambles of claims 1 and 12 state that the relevant communications

---

[1] Defendant's second motion to dismiss was mooted once Magnacross filed its Second Amended Complaint.  (Dkt. No. 84).  Defendant also filed a Motion to Stay pending a decision by this Court of Defendant's second motion to dismiss.  (Dkt. No. 77).  The Motion to Stay has also been mooted by the filing of Magnacross's Second Amended Complaint.

channel is the one for the data between the two data sensors (not the apparatus) and the data processing means.

Magnacross's Second Amended Complaint plausibly pleads direct infringement of claims 1 and 12 of the patent-in-suit regardless of the proposed construction.  Magnacross's complaint explains how the Accused Instrumentality is used by Defendant to perform the steps of method claim 1 in addition to satisfying every limitation of apparatus claim 12.  Magnacross also provides examples of Defendant's infringement through citation to Defendant's website and marketing materials.  Defendant's attack on Magnacross's accusation of indirect infringement is only based on Defendant's contention that Magnacross has not pled direct infringement.  Because Magnacross has pled direct infringement, Defendant's argument for indirect infringement fails.  Regardless, Magnacross has sufficiently pled indirect infringement under the appropriate legal standard.

Defendant's Motion is also effectively moot since Magnacross already served its PR 3-1 claim chart explaining where each claim element is found in each Accused Instrumentality. (Dkt. No. 55).  The PR 3-1 claim chart "provides far more detail than Rule 8's pleading requirements," which "render[s] [Defendant's] motion superfluous for all practical purposes." *Parallel Networks, LLC v. Abercrombie & Fitch, et. al.*, C.A. No. 6:10-cv-111-LED at Dkt. No. 336 at 1 (E.D. Tex. March 14, 2011) (Ex. 1).

Magnacross therefore respectfully request that the Court deny Defendant's Motion.  In the event the Court finds that the pleadings in the Second Amended Complaint are insufficient, Magnacross respectfully requests that the Court grant Magnacross leave to amend the complaint to address any deficiencies.

## II.    STATEMENT OF FACTS

The patent at issue, United States Patent No. 6,917,304 ("the '304 Patent"), is entitled "Wireless Mutliplex [*sic*] Data Transmission System."  (C.A. 2:16-cv-507, Dkt. No. 13 at ¶12, Ex. A at cover).  The '304 patent issued on July 12, 2005, and has a foreign application priority date of April 3, 1997.  (*Id.* at Ex. A).    Magnacross owns all right, title and interest in the '304 patent.  (*Id.* at ¶13).  This Court has subject matter jurisdiction over this action and venue is proper in this district, which is not disputed in Defendant's motion.  (*Id.* at ¶¶3-9).

### A.    U.S. Patent No. 6,917,304 – Claims 1 and 12

The '304 patent is directed to, *inter alia*, a method and apparatus for wireless transmission of data through a communications channel between at least two local data sensors and a data processing function to receive data from the local sensors.  (*Id.* at Ex. A at Abstract). The claims are directed to communication between data sensors and a data processing means, not between a claimed apparatus and a data processing function, as Defendant incorrectly argues. (Dkt. No. 106 at 6).

Claim 1 of the '304 patent, which is asserted in the Second Amended Complaint, is a method claim for the wireless transmission of data from data sensors to a data processor:

> 1. A method of wireless transmission of data in digital and/or analogue format through a communications channel from at least two data sensors to a data processing means said method comprising the step of division of said channel into sub-channels and transmitting said data from said data sensors respectively though said sub-channels accordingly; characterized by
>
> > a) said step of division of said communications channel being effected asymmetrically whereby the data carrying capacities of said sub-channels are unequal; and
> >
> > b) the data rate required for data transmission from said local sensors differing substantially between said at least two sensors; and
> >
> > c) allocating data from said local data sensors to respective ones or groups of said sub-channels in accordance with the data carrying capacities of said sub-channels.

3

(Ex. 2 at col. 7:30-45).   Claim 1 is a method claim, which, contrary to Defendant's repeated assertion, does not have a "claimed apparatus." (*e.g.*, Dkt. No. 106 at 6, 7).   Claim 1 requires dividing a communication channel into sub-channels and transmitting data from data sensors through the sub-channels.   The channels are divided asymmetrically such that the data carrying capacities of the sub-channels are unequal.   The data rate for data transmission from the sensors differs substantially between the data sensors.   Data from the data sensors is allocated to one or a group of sub-channels in accordance with the data carrying capacities of the sub-channels. Claim 1 does not require transmission of data "from the claimed apparatus" to a data processing means.   (*See* Dkt. No. 106 at 7).

Claim 12 of the '304 patent, which is also asserted in the Second Amended Complaint, is an apparatus claim similarly directed to the wireless transmission of data between data sensors and a data processor:

> 12. Apparatus for wireless transmission of data in digital and/or analogue format through a communications channel from at least two local data sensors to a data processing means, the apparatus comprising a multiplexer adapted to effect division of said communications channel into sub-channels, and a transmitter adapted to transmit said data through said sub-channels accordingly; characterized by
>
> > a) said multiplexer being adapted to divide said communications channel asymmetrically whereby the data carrying capacities of said sub-channels are unequal; and
> >
> > b) control means adapted to allocate data from said local data sensors to respective ones or groups of said communications sub-channels in accordance with substantially different data rate requirements from said local sensors.

(Ex. 2 at col. 8:20-35).

Claim 12 is distinguishable from claim 1 because claim 12 is directed to an apparatus, whereas claim 1 is directed to a method.   Claim 1 is a method claim that requires the step of "transmitting [ ] data from [ ] data sensors," whereas claim 12 has no such limitation. (*Id.* at col. 7:34-35).   Instead, claim 12 is an apparatus claim in which the apparatus requires a transmitter

4

"adapted to" transmit data sensors data through sub-channels, rather than requiring an actual transmission.   (*Id.* at col. 8:25-26); *see Finjan*, 626 F.3d at 1204.

### B.    Magnacross's Second Amended Complaint

On September 15, 2016, Magnacross filed its Second Amended Complaint for Patent Infringement accusing Defendant of infringing at least claims 1 and 12 of the '304 patent directly and indirectly (by inducement).   (Dkt. No. 84 at ¶¶16-22).

Magnacross's allegation of direct infringement in its Second Amended Complaint identifies (a) the accused instrumentality (wireless routers) that infringes claim 12 and that is used to perform a method that infringes claim 1, (b) the particular wireless routers having a wireless transmitter, multiplexer, and control means, (c) how the accused instrumentality asymmetrically divides the communication channel into unequal sub-channels, and (d) how the control means of the accused instrumentality allocated data from the data sensors to the sub-channels in accordance with the different data rate requirements from the data sensors:

> 16.    **Direct Infringement.**   Upon information and belief, Defendant has been and now is directly infringing at least claim 12 of the '304 patent in the State of Texas, in this District, and elsewhere in the United States, by actions comprising making, using, selling, and/or offering for sale an apparatus for wireless transmission of data in digital and/or analog format through a communications channel from at least two local data sensors to a data processing means, including without limitation Defendant's wireless router, including the ADTRAN 424RG, Bluesocket Access Points (1920, 1925, 1930, 1935, 1940, 2030, and 2035), and NetVanta Access Points (160, 161) ("Accused Instrumentality").

> 17.    Upon information and belief, the Accused Instrumentality is an apparatus for wireless transmission of data in digital format through a communications channel, for example, the 2.4 GHz channel, between approximately 2.4 GHz and 2.5 GHz.   Data sensors, such as data sensors that use the IEEE 802.11 b/g and IEEE 802.11n wireless specifications to transmit over a wireless local area network, are capable of being and are wirelessly connected to the Accused Instrumentality to transmit data through the communication channel to a data processing means.   Upon information and belief, the Accused Instrumentality has a multiplexer adapted to divide the communications channel into sub-channels and has a

transmitter to transmit data through the sub-channels. For example, upon information and belief, the Accused Instrumentality may divide the 2.4 GHz channel into multiple sub-channels through which data can be transmitted. The multiplexer is adapted to divide the communications channel asymmetrically such that the data carrying capacities of the sub-channels are unequal. For example, the data carrying capacity for channels of the Accused Instrumentality using the 802.11g specification is unequal to the data carrying capacity for channels using the 802.11n.

18.     Upon information and belief, the Accused Instrumentality has a controller that allocates data from the local data sensors to ones or groups of the communications sub-channels in accordance with the substantially different data rate requirements of the local sensors. For example, the data sensors that use the 802.11g specification can have a substantially different data rate requirement than data sensors using the 802.11n specification and the data from the data sensors are allocated to the channels for the appropriate specification.

19.     On information and belief, Defendant infringes claim 12 through making, using (including through testing and demonstrations), selling, and/or offering for sale products, including the Accused Instrumentality, that are used with 802.11b/g and 802.11n wireless sensors in a smart environment. (*e.g.*, https://portal.adtran.com/pub/Library/Case_Studies/AD10193_Scott_Robinson_Automotive_Case_Study.pdf (AD10193 Scott Robinson Automotive Case Study); https://portal.adtran.com/pub/Library/Case_Studies/EN2246%20Town%20of%20Westford%20Case%20Study.pdf (EN2246 Town of Westford Case Study)). For example, ADTRAN has set up its Accused Instrumentalities to allow customers to transmit sensor data from vehicles to diagnostic tools over Wi-Fi using the Accused Instrumentalities. (*e.g.*, https://portal.adtran.com/pub/Library/Case_Studies/AD10193_Scott_Robinson_Automotive_Case_Study.pdf). Defendant has also set up its Accused Instrumentalities for use for Wi-Fi transmissions from audio sensors (*e.g.*, IP telephony), and video sensors. (*e.g.*, https://portal.adtran.com/pub/Library/Case_Studies/EN2246%20Town%20of%20Westford%20Case%20Study.pdf). In addition, although claim 12 is an apparatus claim that does not require wireless sensors as part of the claimed apparatus, Defendant also makes and/or uses systems using the Accused Instrumentality with sensors that transmit wirelessly by Wi-Fi to a wireless router using the 802.11b/g specification, and that transmit wirelessly by Wi-Fi to a wireless router using the 802.11n specification. (*e.g.*, https://portal.adtran.com/pub/Library/Case_Studies/AD10193_Scott_Robinson_Automotive_Case_Study.pdf; https://portal.adtran.com/pub/Library/Case_Studies/EN2246%20Town%20of%20Westford%20Case%20Study.pdf). ADTRAN advertises using the

6

Accused Instrumentality with wireless sensors in a manner that infringes the '304 patent. (*Id.*;
http://portal.adtran.com/web/page/portal/Adtran/group/4312;
https://adtran.com/web/fileDownload/doc/33272 (stating that the smart-home revolution, including home monitoring and security solutions (*i.e.*, using wireless sensors), will help drive the market demand for ADTRAN products);
http://www.businesswire.com/news/home/20150819005108/en/ADTRAN
-Slashes-Time-Market-Gigabit-Broadband-Service (An ADTRAN press release regarding using ADTRAN products for smart home, wireless video transmission (using audio and video sensors) and the Internet of Things (in which everyday objects have network connectivity to allow them to send and receive data (including sensor data)).

20.    Upon information and belief, Defendant has been and now is also directly infringing at least claim 1 of the '304 patent in the State of Texas, in this District, and elsewhere in the United States, by performing a method of wireless transmission of data in digital format through a communications channel from at least two data sensors to a data processing means including without limitation transmitting data from at least two data sensors to a data processing means using Defendant's wireless routers, including the Accused Instrumentalities.  Magnacross incorporates by reference paragraphs 17-19.    For example, upon information and belief, Defendant has used and is using the Accused Instrumentality to provide a communications channel, for example, the 2.4 GHz channel, between approximately 2.4 GHz and 2.5 GHz, and divide the 2.4 GHz channel into multiple sub-channels through which data from data sensors is transmitted.  Upon information and belief, Defendant has used and is using the Accused Instrumentality to divide the communications channel asymmetrically such that the data carrying capacities of the sub-channels are unequal.  For example, Defendant has used and is using the Accused Instrumentality to divide the communications channels into 802.11b/g and 802.11n configurations, which have unequal data carry capacities.  Upon information and belief, Defendant has used and is using data sensors that have substantially different data transmission rates for data transmission to the Accused Instrumentality. (*Id.*).  Upon information and belief, Defendant also has used and is using the Accused Instrumentality to allocate data from the local data sensors to ones or groups of sub-channels in accordance with the data carrying capacities of the sub-channels.  For example, Defendant has used and is using systems that use the Accused Instrumentality with sensors that transmit wirelessly by Wi-Fi to a wireless router using the 802.11b/g specification, and that transmit wirelessly by Wi-Fi to a wireless router using the 802.11n specification.  (*Id.*).

(Dkt. No. 84 at ¶¶16-20).

The Second Amended Complaint also adds allegations of indirect infringement:

> 21.     **Indirect Infringement.**  On information and belief, Defendant has been and now is indirectly infringing by way of inducing infringement of at least claims 1 and 12 of the '304 patent in the State of Texas, in this District, and elsewhere in the United States, by providing to customers Defendant's Accused Instrumentalities for the wireless transmission of data through a communications channel from local data sensors to a data processing means, as described above.  Defendant is a direct and indirect infringer, and its customers using the Accused Instrumentalities are direct infringers.  Upon information and belief, Defendant had actual knowledge of the '304 patent since at least May 20, 2016, when it was served with the original Complaint in this action, and has known of its infringement since at least that date.

> 22.     On information and belief, since becoming aware of the '304 patent, Defendant is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the Accused Instrumentalities to its customers and by aiding and abetting its use in a manner known to infringe by Defendant, as described in the Original Complaint.  Defendant encourages customers to use the Accused Instrumentalities for conducting the directly infringing use and advertises the directly infringing use by customers despite knowing of the infringing use.  (*E.g.*, [https://portal.adtran.com/pub/Library/Case_Studies/AD10193_Scott_Robinson_Automotive_Case_Study.pdf; https://portal.adtran.com/pub/Library/Case_Studies/EN2246%20Town%20of%20Westford%20Case%20Study.pdf; http://portal.adtran.com/web/page/portal/Adtran/group/4312; https://adtran.com/web/fileDownload/doc/33272](#) (stating that the smart-home revolution, including home monitoring and security solutions (*i.e.*, using wireless sensors), will help drive the market demand for ADTRAN products); [http://www.businesswire.com/news/home/20150819005108/en/ADTRAN-Slashes-Time-Market-Gigabit-Broadband-Service](#) (ADTRAN press release regarding using ADTRAN products for smart home, wireless video transmission (using audio and video sensors) and the Internet of Things (in which everyday objects have network connectivity to allow them to send and receive data (including sensor data)]).  On information and belief, Defendant knew or should have known that through its acts it was and is inducing infringement of the '304 patent since it became aware of the infringement at least as of the date of the service of the Original Complaint.

(Dkt. No. 84 at ¶¶21-22).  The Second Amended Complaint therefore alleges that Defendant, as

a direct infringer, is also an indirect infringer by inducing infringement by providing the accused

instrumentality to Defendant's customers for use with sensors in a manner that infringes claims 1 and 12.  (*Id.*).  The customers in Magnacross's accusation of indirect infringement are the direct infringers.  (*Id.*).  The requisite level of intent required for the assertion of induced infringement is also alleged, as is knowledge of the '304 patent, and the infringement.  (*Id.*).

## III.    STATEMENT OF LAW

Regional circuit law applies to motions to dismiss for the failure to state a claim under Rule 12(b)(6), Fed.R.Civ.P.  *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356 (Fed.Cir. 2007); *Lochner Techs., LLC v. AT Labs Inc.*, C.A. No. 2:11-cv-242-JRG, slip op. at 2 (E.D. Tex. July 5, 2012) (Ex. 3)); *Lodsys, LLC v. Brother Int'l Corp.*, C.A. No. 2:11-cv-90-JRG; slip op. at 1 (E.D. Tex. March 8, 2012) (Ex. 5).  The standard for deciding a Rule 12(b)(6) motion has been summarized by the Court of Appeals for the Fifth Circuit as follows:

> A motion to dismiss under rule 12(b)(6) "is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards,* 677 F.2d 1045, 1050 (5th Cir. 1982).  The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Campbell v. Wells Fargo Bank,* 781 F.2d 440, 442 (5th Cir. 1986).  The district court may not dismiss a complaint under rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*Lowery v. Texas A&M Univ. Sys.,* 117 F.3d 242, 247 (5th Cir. 1997) (citations omitted); *see Phonometrics, Inc. v. Hospitality Franchise Systems*, 203 F.3d 790, 793-794 (Fed.Cir. 2000) ("the dismissal standard is extraordinary, and one not to be taken lightly"; a motion to dismiss "is viewed with disfavor and rarely granted." "Dismissal of a claim… is a precarious disposition with a high mortality rate." (*citing and quoting Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997))).

Under Rule 8(a)(2), a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 8(a)(2), Fed.R.Civ.P.  A complaint

is required to have allegations sufficient to show that the plaintiff is plausibly entitled to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 570 (2007) ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.").  Whether a complaint states a plausible claim for relief is a context-specific task that requires the Court "to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009).

To state a claim of patent infringement, "a patentee need only plead facts sufficient to place the alleged infringer on notice as to what he must defend."  *McZeal*, 501 F.3d at 1357 (*citing Twombly*, 550 U.S. at 565 n.10).  Apparatus claims cover what a device is, not what it does. *Hewlett-Packard Co.*, 909 F.2d at 1468.  "[A]n accused device may be found to infringe if it is reasonably capable of satisfying the claim limitations, even though it may also be capable of noninfringing modes of operation."  *Hilgreave Corp. v. Symantec Corp.*, 265 F.3d 1336, 1343 (Fed. Cir. 2001); *Finjan*, 626 F.3d at 1204 (*quoting Hilgreave*); *see also Intel Corp. v. U.S. Int'l Trade Comm'n,* 946 F.2d 821, 832 (Fed.Cir. 1991).  A method claim is infringed "when all of the steps of the claim are performed by or attributed to a single entity." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1023 (Fed.Cir. 2015).

For induced infringement, a complaint alleging indirect infringement is sufficient if it contains "facts plausibly showing that [the defendant] specifically intended their customers to infringe the [asserted] patent and know that the customer's act constituted infringement." *Inmotion Imagery Techs., LLC v. Imation Corp.*, C.A. No. 2:12-cv-298-JRG, slip op. at 5 (E.D. Tex. Mar. 23, 2016) (Ex. 7) (*quoting In re Bill of Lading Trans & Process. Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed.Cir. 2012)).  The filing of a lawsuit "provides notice of the asserted

patents and provides a sufficient basis to allege the knowledge and intent necessary to sustain allegations of indirect infringement." *Id.*

## IV.    MAGNACROSS'S SECOND AMENDED COMPLAINT PLAUSIBLY PLEADS SUFFICIENT FACTS TO ASSERT DIRECT AND INDIRECT INFRINGEMENT

Magnacross's Second Amended Complaint plausibly pleads facts sufficient to place Defendant on notice as to the assertion of direct infringement.

### A.    Defendant's Motion to Dismiss is Based on Incorrect Constructions of Claims 1 and 12 of the '304 Patent

Defendant's Motion is based on incorrect constructions of claims 1 and 12. Defendant incorrectly contends that claims 1 and 12 claim "a method and apparatus in which data is transmitted *from the claimed apparatus* (*i.e.*, what out to be alleged as the accused product) by wireless transmission to a data processing function." (Dkt. No. 106 at 6).

First, Defendant contends that claim 1 requires a "claimed apparatus" that transmits data; however, claim 1 is a method claim that does not have a "claimed apparatus." Claim 1 requires dividing a communications channel between data sensors and a data processor, and transmitting data from the data sensors through the sub-channels. The division of the communications channel is effected by asymmetrically dividing it into sub-channels such that the data carrying capacities of the sub-channels are unequal. The data rate required for data transmission from the data sensors differs substantially. The data from the data sensors is allocated to sub-channels according to the data carrying capacities of the sub-channels. There is no "claimed apparatus" in claim 1. Defendant's non-infringement argument for claim 1 is therefore inapplicable because it is based on an incorrect claim construction.

Second, Defendant incorrectly argue that claims 1 and 12 must be construed such that the relevant wireless communications channel is the one "between the [accused] apparatus and the data processing means." (Dkt. No. 106 at 7; *also id.* at 8 ("a communications channel between

the Accused Instrumentality and any data processing means, which is the subject of the claimed invention")).  However, the preamble of claims 1 and 12 states that the relevant communications channel is the one for the data between the ***two data sensors*** (not the apparatus) and the data processing means.  (Ex. 2 at col. 7:30-32; col. 8:20-23).  The claims are consistent with the specification, which explains that the "invention relates to a method and apparatus for wireless transmission of data, ***through a communications channel comprising at least two local data sensors and a data processing function*** to receive data from the local sensors."  (Ex. 2 at col. 1:4-7) (emphasis added).  As explained above, claim 1 does not require a "claimed apparatus" for the transmitting data from the data sensors.  As for claim 12, the claimed apparatus is between the two local data sensors and the data processing means; however, the claim does not require that the claimed apparatus includes or is wired to either the data sensors or the data processing means.

Defendant's narrow construction is exemplified by its diagrams, which improperly narrow the scope of the claims.  Magnacross agrees with Defendant that the following diagram, in which there is a wired transmission between the data sensors and an apparatus that then wirelessly transmits data to a data processing means, is one configuration that could be accused of infringement (assuming that the other claim limitations are satisfied):



(Dkt. No. 106 at 9).  However, Defendant points to an example in the specification to limit the claim scope to this configuration.  There is no clear intention in the specification to limit the claim scope and therefore it is improper to limit claims to an example in the specification even if there is only one example.  *Thorner v. Sony Computer Ent. America LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012); *Teleflex Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327-28 (Fed. Cir. 2002).

Regardless, based on the claim language and the specification, there are other configurations that could infringe.  For example, if Defendant's second image were completed to add a data processing means such that there is wireless transmissions from the data sensors to an apparatus that then transmits the data (wired or wirelessly) to a data processing means, it could also be accused of infringement (again assuming that the other claim limitations are satisfied):



(*See* Dkt. No. 106 at 9 (revised to add communication with data processing means)).   This diagram shows a communications channel between the local data sensors and the data processing means that is in part wireless and in part wired.   Although the "communications channel" must be capable of handling "wireless transmission" of data, the "communications channel" between the local data sensors and the data processing means can also in part include wired transmission. For example, the specification provides figures and describes how sub-channels are combined by circuitry (wired transmission) before the wireless transmission of the data.   (Ex. 2 at col. 5:22-37; col. 6:11-15; Figs. 2-3, 4-5).   Defendant's argument that this configuration cannot infringe is therefore incorrect.

Because Defendant's non-infringement argument is based on incorrect claim constructions, Defendant's motion to dismiss must be denied.

## B.    Magnacross's Second Amended Complaint Properly Alleges a Claim for Direct Infringement of Claims 1 and 12 of the '304 Patent

Using either claim construction,[2] Magnacross's Second Amended Complaint sufficiently pleads a claim for patent infringement.   Magnacross's Second Amended Complaint accuses Defendant's wireless routers, including model numbers ADTRAN 424RG, Bluesocket Access Points (1920, 1925, 1930, 1935, 1940, 2030, and 2035), and NetVanta Access Points (160, 161) ("Accused Instrumentality") of infringing claims 1 and 12.   (Dkt. No. 13 at ¶¶16, 20).   ADTRAN performs a method of wireless transmission of data in a digital format through a communications channel from data sensor to a data processing means using Accused Instrumentalities in a manner that infringes claim 1 of the '304 patent.   The Accused Instrumentalities also infringe claim 12 because they are apparatuses for wireless transmission of data in a digital format

---

[2] Adopting Defendant's proposed claim construction at this phase of the case would be legally incorrect.   The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true.   *Campbell,* 781 F.2d at 442.

through a communications channel from at least two local data sensors to a data processing means.

### 1.     Magnacross's Second Amended Complaint Plausibly Alleges Direct Infringement of Claim 1

The following chart demonstrates how the Second Amended Complaint plausibly pleads facts sufficient to place Defendant on notice as to the allegation of direct infringement of claim 1:

| [Claim] 1. A method of wireless transmission of data in digital and/or analogue format through a communications channel from at least two data sensors to a data processing means said method comprising | "Upon information and belief, Defendant has been and now is also directly infringing at least claim 1 of the '304 patent in the State of Texas, in this District, and elsewhere in the United States, by performing a method of wireless transmission of data in digital format through a communications channel from at least two data sensors to a data processing means including without limitation transmitting data from at least two data sensors to a data processing means using Defendant's wireless routers, including the Accused Instrumentalities.  Magnacross incorporates by reference paragraphs 17-19.  For example, upon information and belief, Defendant has used and is using the Accused Instrumentality to provide a communications channel, for example, the 2.4 GHz channel, between approximately 2.4 GHz and 2.5 GHz, and divide the 2.4 GHz channel into multiple sub-channels through which data from data sensors is transmitted.   " (Dkt. No. 84 at ¶20). |
| | "On information and belief, Defendant infringes… through making, using (including through testing and demonstrations), selling, and/or offering for sale products, including the Accused Instrumentality, that are used with 802.11b/g and 802.11n wireless sensors in a smart environment.  (*e.g.*, https://portal.adtran.com/pub/Library/Case_Studies/AD10193_Scott_Robinson_Automotive_Case_Study.pdf (AD10193 Scott Robinson Automotive Case Study); https://portal.adtran.com/pub/Library/Case_Studie |

| | |
|---|---|
| | s/EN2246%20Town%20of%20Westford%20Case%20Study.pdf (EN2246 Town of Westford Case Study)).  For example, ADTRAN has set up its Accused Instrumentalities to allow customers to transmit sensor data from vehicles to diagnostic tools over Wi-Fi using the Accused Instrumentalities.  (*e.g.*, https://portal.adtran.com/pub/Library/Case_Studies/AD10193_Scott_Robinson_Automotive_Case_Study.pdf).  Defendant has also set up its Accused Instrumentalities for use for Wi-Fi transmissions from audio sensors (e.g., IP telephony), and video sensors.   (*e.g.*, https://portal.adtran.com/pub/Library/Case_Studies/EN2246%20Town%20of%20Westford%20Case%20Study.pdf).  ”  (Dkt. No. 84 at ¶19 (incorporated by reference into ¶20)). |
| the step of division of said channel into sub-channels and transmitting said data from said data sensors respectively though said sub-channels accordingly; characterized by | “Upon information and belief, Defendant has used and is using the Accused Instrumentality to divide the communications channel asymmetrically such that the data carrying capacities of the sub-channels are unequal.  For example, Defendant has used and is using the Accused Instrumentality to divide the communications channels into 802.11b/g and 802.11n configurations, which have unequal data carry capacities.”  (*Id.* at ¶20).  “Defendant also makes and/or uses systems using the Accused Instrumentality with sensors that transmit wirelessly by Wi-Fi to a wireless router using the 802.11b/g specification, and that transmit wirelessly by Wi-Fi to a wireless router using the 802.11n specification.  (*e.g.*, https://portal.adtran.com/pub/Library/Case_Studies/AD10193_Scott_Robinson_Automotive_Case_Study.pdf; https://portal.adtran.com/pub/Library/Case_Studies/EN2246%20Town%20of%20Westford%20Case%20Study.pdf).   ADTRAN advertises using the Accused Instrumentality with wireless sensors to in a manner that infringes the ‘304 patent.  (*Id.*; http://portal.adtran.com/web/page/portal/Adtran/group/4312; https://adtran.com/web/fileDownload/doc/33272 (stating that the smart-home revolution, including |

16

| | home monitoring and security solutions (*i.e.*, using wireless sensors), will help drive the market demand for ADTRAN products); http://www.businesswire.com/news/home/201508 19005108/en/ADTRAN-Slashes-Time-Market-Gigabit-Broadband-Service (ADTRAN press release regarding using ADTRAN products for smart home, wireless video transmission (using audio and video sensors) and the Internet of Things (in which everyday objects have network connectivity to allow them to send and receive data (including sensor data)). (*Id.* at ¶19 (incorporated by reference into ¶20)). "For example, upon information and belief, Defendant has used and is using the Accused Instrumentality to provide a communications channel, for example, the 2.4 GHz channel, between approximately 2.4 GHz and 2.5 GHz, and divide the 2.4 GHz channel into multiple sub-channels through which data from data sensors is transmitted." (*Id.* at ¶20). |
|---|---|
| a) said step of division of said communications channel being effected asymmetrically whereby the data carrying capacities of said sub-channels are unequal; and | "Upon information and belief, Defendant has used and is using the Accused Instrumentality to divide the communications channel asymmetrically such that the data carrying capacities of the sub-channels are unequal. For example, Defendant has used and is using the Accused Instrumentality to divide the communications channels into 802.11b/g and 802.11n configurations, which have unequal data carry capacities." (*Id.* at ¶20). |
| b) the data rate required for data transmission from said local sensors differing substantially between said at least two sensors; and | "Upon information and belief, Defendant has used and is using data sensors that have substantially different data transmission rates for data transmission to the Accused Instrumentality." (*Id.*). "For example, the data sensors that use the 802.11g specification can have a substantially different data rate requirement than data sensors using the 802.11n specification and the data from the data sensors are allocated to the channels for the appropriate specification." (*Id.* at ¶18 (incorporated by reference into ¶20)). |

| | "For example, Defendant has used and is using systems that use the Accused Instrumentality with sensors that transmit wirelessly by Wi-Fi to a wireless router using the 802.11b/g specification, and that transmit wirelessly by Wi-Fi to a wireless router using the 802.11n specification." (*Id.* at ¶20). |
|---|---|
| c) allocating data from said local data sensors to respective ones or groups of said sub-channels in accordance with the data carrying capacities of said sub-channels. | "Upon information and belief, the Accused Instrumentality has a controller that allocates data from the local data sensors to ones or groups of the communications sub-channels in accordance with the substantially different data rate requirements of the local sensors.  For example, the data sensors that use the 802.11g specification can have a substantially different data rate requirement than data sensors using the 802.11n specification and the data from the data sensors are allocated to the channels for the appropriate specification." (*Id.* at ¶18 (incorporated by reference into ¶20)). <br><br> "Upon information and belief, Defendant also has used and is using the Accused Instrumentality to allocate data from the local data sensors to ones or groups of sub-channels in accordance with the data carrying capacities of the sub-channels.  For example, Defendant has used and is using systems that use the Accused Instrumentality with sensors that transmit wirelessly by Wi-Fi to a wireless router using the 802.11b/g specification, and that transmit wirelessly by Wi-Fi to a wireless router using the 802.11n specification." (*Id.* at ¶20). |

The Second Amended Complaint also includes examples to case studies and press releases showing Defendant's performance of all of the steps in claim 1.  (*E.g.*, *id.* at ¶19 (incorporated by reference into ¶20)).

Defendant's non-infringement arguments are based on its incorrect contention that claim 1 requires a particular apparatus that performs all of the steps of the claimed method.  (Dkt. No. 106 at 8 ("according to claim 1…; what matters is that the apparatus transmits over a

communications channel to a data processing means, and that the apparatus perform certain functions on *that* communications channel.")).[3]   A method claim is infringed "when all of the steps of the claim are performed by or attributed to *a single entity*," not a single apparatus. *Akamai*, 797 F.3d at 1023 (emphasis added).  Whether a single apparatus is used to perform the method steps is irrelevant.   Magnacross's Second Amended Complaint therefore plausibly alleges that Defendant performs every step of claim 1 and therefore Defendant's Motion should be denied.  Regardless, even using Defendant's proposed claim construction, as explained in the complaint, the accused instrumentality is used to transmit data over subchannels of a communication channel from data sensors to a data processing means.

> ## 2.   Magnacross's Second Amended Complaint Properly Alleges Direct Infringement of Claim 12

The following chart demonstrates how the Second Amended Complaint pleads facts sufficient to place Defendant on notice as to the allegation of direct infringement of claim 12:

| [Claim] 12. Apparatus for wireless transmission of data in digital and/or analogue format through a communications channel from at least two local data sensors to a data processing means, | "Upon information and belief, the Accused Instrumentality is an apparatus for wireless transmission of data in digital format through a communications channel, for example, the 2.4 GHz channel, between approximately 2.4 GHz and 2.5 GHz.  Data sensors, such as data sensors that use the IEEE 802.11 b/g and IEEE 802.11n wireless specifications to transmit over a wireless local area network, are capable of being and are wirelessly connected to the Accused Instrumentality to transmit data through the communication channel to a data processing means."  (Dkt. No. 84 at ¶17). |
| the apparatus comprising a multiplexer adapted to effect division of said communications | "Upon information and belief, the Accused Instrumentality has a multiplexer adapted to divide the communications channel into sub- |

---

[3] *Also* Dkt. No. 106 at 6 ("Claims 1 and 12 claim a method and apparatus in which data is transmitted *from the claimed apparatus* (i.e., what ought to be alleged as the accused product) by wireless transmission to a data processing function."); *id.* at 7 ("Thus, both claims are directed to the transmission of data from the claimed apparatus to the data processing means.").

| | |
|---|---|
| channel into sub-channels, | channels and has a transmitter to transmit data through the sub-channels.  For example, upon information and belief, the Accused Instrumentality may divide the 2.4 GHz channel into multiple sub-channels through which data can be transmitted."  (*Id.*). |
| and a transmitter adapted to transmit said data through said sub-channels accordingly; characterized by | The Accused Instrumentality is a "wireless router" for "wireless transmission of data" using IEEE802.11 b/g and IEEE 802.11n wireless specifications.  (*Id.* at ¶¶16-17). |
| a) said multiplexer being adapted to divide said communications channel asymmetrically whereby the data carrying capacities of said sub-channels are unequal; and | "The multiplexer is adapted to divide the communications channel asymmetrically such that the data carrying capacities of the sub-channels are unequal.  For example, the data carrying capacity for channels of the Accused Instrumentality using the 802.11g specification is unequal to the data carrying capacity for channels using the 802.11n." (*Id.* at ¶17). |
| b) control means adapted to allocate data from said local data sensors to respective ones or groups of said communications sub-channels in accordance with substantially different data rate requirements from said local sensors. | "Upon information and belief, the Accused Instrumentality has a controller that allocates data from the local data sensors to ones or groups of the communications sub-channels in accordance with the substantially different data rate requirements of the local sensors.  For example, the data sensors that use the 802.11g specification can have a substantially different data rate requirement than data sensors using the 802.11n specification and the data from the data sensors are allocated to the channels [of the Accused Instrumentality] for the appropriate specification." (*Id.* at ¶18). |

The complaint also has a paragraph that demonstrates that the accused instrumentality is not only capable of infringing claim 12, but the accused instrumentality has also been made, used, offered for sale, and sold by Defendant to customers to wirelessly transmit data from data sensors.   (Dkt. No. 84 at ¶19 (Defendant has set up its Accused Instrumentalities to allow customers to transmit sensor data from vehicles to diagnostic tools over Wi-Fi using the Accused Instrumentalities; Defendant has also set up its Accused Instrumentalities for use for Wi-Fi

20

transmissions from audio sensors (*e.g.*, IP telephony), and video sensors; Defendant advertises smart home monitoring and security solutions using the Accused Instrumentality with wireless sensors to in a manner that infringes the '304 patent).  The Second Amended Complaint states Defendant also makes, uses, and advertises systems using the Accused Instrumentality with sensors that transmit wirelessly by Wi-Fi to a wireless router using the 802.11b/g specification, and that transmit wirelessly by Wi-Fi to a wireless router using the 802.11n specification.  (*Id.*).

Defendants' non-infringement argument with respect to claim 12 is identical to its non-infringement argument with respect to claim 1.  As explained above with respect to claim construction, Defendant misconstrues the claim to contend that the relevant communications channel is between the claimed apparatus and the data processing means, when the claims disclose that the relevant communications channel is between the data sensors and the data processing means.  (*Supra* §V(A)).  As shown in the above claim chart, when the proper communications channel is analyzed, the Accused Instrumentalities satisfy the disputed limitation because they are capable of transmitting data from data sensors to a data processing means using sub-channels as described in claim 12.  The Second Amended Complaint therefore properly alleges that the accused instrumentality infringes claim 12 of the '304 patent.  Even using Defendant's proposed construction, the Accused Instrumentalities infringe claim 12.  As explained in the above claim chart, the Accused Instrumentality is between the data sensors and the data processor, and has a transmitter that is used to transmit data from the data sensor through the subchannels.

**C.   Magnacross's Second Amended Complaint Contains an Accusation of Induced Infringement of Claims 1 and 12 that is Properly Pled Because it Pleads Plausible Facts Showing that Defendant Possessed the Specific Intent to Encourage its Customers to Infringe the '304 Patent**

Defendant's motion to dismiss with respect to indirect infringement is solely based on its contention that Magnacross has not properly plead direct infringement.  Because Magnacross has properly plead direct infringement, Defendant's motion with respect to indirect infringement also should be denied.

Regardless, Magnacross's Second Amended Complaint complies with the legal requirements for pleading induced infringement.  Magnacross's Second Amended Complaint is sufficient because it:

- adequately pleads direct infringement by a defendant's customer ("its customers using the Accused Instrumentalities are direct infringers") (Dkt. No. 84 at ¶21);

- contains facts plausibly showing that Defendant specifically intended for its customers to infringe the asserted patent (Defendant "specifically intend[ed] to induce infringement by providing the Accused Instrumentalities to its customers and by aiding and abetting its use in a manner known to infringe by Defendant, as described in the Original Complaint. Defendant encourages customers to use the Accused Instrumentalities for conducting the directly infringing use and advertises the directly infringing use by customers despite knowing of the infringing use. (*E.g.*, [https://portal.adtran.com/pub/Library/Case_Studies/AD10193_Scott_Robinson_Automotive_Case_Study.pdf; https://portal.adtran.com/pub/Library/Case_Studies/EN2246%20Town%20of%20Westford%20Case%20Study.pdf; http://portal.adtran.com/web/page/portal/Adtran/group/4312; https://adtran.com/web/fileDownload/doc/33272](#) (stating that the smart-home revolution, including home monitoring and security solutions (*i.e.*, using wireless sensors), will help drive the market demand for ADTRAN products); [http://www.businesswire.com/news/home/20150819005108/en/ADTRAN-Slashes-Time-Market-Gigabit-Broadband-Service](#) (ADTRAN press release regarding using ADTRAN products for smart home, wireless video transmission (using audio and video sensors) and the Internet of Things (in which everyday objects have network connectivity to allow them to send and receive data (including sensor data)])." (*Id.* at ¶22); and

- contains facts plausibly showing that Defendant knew that the customer's acts constituted infringement (Defendant was aware of the patent-in-suit and the

asserted infringement at least as early as the service of the Original Complaint[4]).
(*Id.* at ¶¶21-22).

The specificity of pleaded facts in Magnacross's Second Amended Complaint for induced infringement complies with the level of disclosure found by this Court to be sufficient in other cases. *See Lochner*, slip op. at 3 (Ex. 3) (*citing* Lochner Amended Complaint at ¶19 (Ex. 4)); *Lodsys*, slip op. at 3 (Ex. 5) (*citing* Lodsys Amended Complaint at ¶¶16, 27 (Ex. 6)); *Inmotion*, slip op. at 5 (Ex. 7) (*citing* Inmotion Imagery Complaint at ¶¶12, 22 (Ex. 8)); *Mobilemedia Ideas LLC v. HTC Corp. and HTC America, Inc.*, C.A. No. 2:10-cv-112-TJW, slip op. at 2 (E.D. Tex. Sept. 15, 2011) (Ex. 9) (*citing* Mobilemedia Complaint at ¶11 (Ex. 10)).

Magnacross's Second Amended Complaint asserts that the filing of the lawsuit provides notice of the asserted patent. (Ex. 2 at ¶¶21-22).  In addition, the Second Amended Complaint contends that "Defendant encourages customers to use the Accused Instrumentalities for conducting the directly infringing use and advertises the directly infringing use by customers despite knowing of the infringing use [citing example publications on Defendant's website and press releases]," and that "Defendant knew or should have known that through its acts it was and is inducing infringement of the '304 patent since it became aware of the infringement at least as of the date of the service of the Original Complaint." (*Id.* at ¶22).  As can be reasonably inferred from the Second Amended Complaint, Defendant possessed the specific intent to encourage its customers to infringe the '304 patent because it knew of the patent-in-suit, knew of the infringement, and continued to provide instructions to its customers for conducting the directly infringing use.

---

[4] This Court has held that "the filing of [a] lawsuit provides notice of the asserted patent[ ] and provides a sufficient basis to allege the knowledge and intent necessary to sustain allegations of indirect infringement." *Inmotion*, slip op. at 5 (Ex. 7); *Lochner*, slip op. at 3 (Ex. 3).

**D.     In the Alternative, Magnacross Should be Granted Leave to Amend its Complaint**

Although Magnacross believes that its Second Amended Complaint sufficiently pleads direct and indirect infringement, in the event the Court finds that the pleadings are insufficient, Magnacross respectfully requests that the Court grant Magnacross leave to amend its complaint to correct any deficiencies.  There is no undue delay, bad faith, or dilatory motive by Magnacross to amend its complaint.  Leave to amend the complaint should therefore be freely given.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss should be denied.

Dated:  October 20, 2016                              Respectfully submitted,

                                                       */s/ David R. Bennett*
                                                 By:   David R. Bennett
                                                       DIRECTION IP LAW
                                                       P.O. Box 14184
                                                       Chicago, IL 60614-0184
                                                       Telephone: (312) 291-1667
                                                       e-mail:  dbennett@directionip.com

                                                       **ATTORNEY FOR PLAINTIFF
                                                       MAGNACROSS LLC**

24

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served on October 20, 2016, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ David R. Bennett*
David R. Bennett